IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LEROY KEMP, | ) | CIVIL NO. 03-00419 SOM-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING RULE 12(c) |
| vs. | ) | MOTION FOR JUDGMENT ON THE |
| | ) | PLEADINGS |
| DR. SISAR PADERAS; NURSE NEAL | ) | |
| HAYASE; NURSE CORRINA HO; ACO | ) | |
| SCOTT KOWOLESKI; and ACO | ) | |
| MELVIN MOISSA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

I.   INTRODUCTION.

Plaintiff Leroy Kemp, a State of Hawaii prisoner, alleges that numerous State of Hawaii employees are liable to him under § 1983. He says they subjected him to cruel and unusual punishment in violation of the Eighth Amendment.[1] Defendants Corrina Buan, Neil Hayase, and Scott Kowaleski move for judgment on the pleadings, arguing that they have qualified immunity from Kemp's claim. Because the First Amended Complaint fails to allege a viable constitutional violation as to each of those Defendants, they have qualified immunity, and judgment on the pleadings is granted in their favor.

---

[1] At the hearing, Kemp clarified that, despite the First Amended Complaint's allegation of a Hawaii constitution violation in paragraph 24, he is not bringing any claim under the Hawaii constitution.

II.       RULE 12(c) STANDARD.

Rule 12(c) states:

> After the pleadings are closed but within
> such time as not to delay the trial, any
> party may move for judgment on the pleadings.
> If, on a motion for judgment on the
> pleadings, matters outside the pleadings are
> presented to and not excluded by the court,
> the motion shall be treated as one for
> summary judgment and disposed of as provided
> in Rule 56, and all parties shall be given
> reasonable opportunity to present all
> material made pertinent to such a motion by
> Rule 56.

The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."); Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency, 24 F. Supp. 2d 1062, 1066 (E.D Cal. 1998) ("The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion.").

A Rule 12(c) motion will only be granted when, viewing the facts as presented in the pleadings in the light most favorable to the plaintiff, and accepting those facts as true, the moving party is entitled to judgment as a matter of law.

Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 n.2 (9th Cir. 1992) ("In reviewing the defendants' motions under Fed.R.Civ.P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations."); General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989) ("Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 12(c).  All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party."); Doe ex rel. Doe v. State of Hawaii Dept. of Educ., 351 F. Supp. 2d 998, 1005 (D. Haw. 2004).

It must be clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint before the motion can be granted. See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("We review de novo a dismissal by judgment on the pleadings under Rule 12(c) . . . . A dismissal on the pleadings for failure to state a claim is proper only if the movant clearly establishes that no material issue of fact remains to be resolved

and that he is entitled to judgment as a matter of law."
(internal quotation and citations omitted)).

III.     FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT.

Kemp alleges that, while he was having a seizure on August 26, 2002, Corrina Buan,[2] a nurse at the Halawa Correctional Facility, "caused serious physical injury to plaintiff's left knee when . . . she fell backwards on his left leg and foot." Complaint ¶¶ 5, 17. Although Kemp alleges that this conduct "constitutes willful neglect and wanton disregard" for his physical condition, see id. ¶ 25, Kemp admitted at the hearing that he is not contending that Buan intentionally fell on his leg.

Kemp alleges that he suffers from seizures. At least four different medications were prescribed to control his seizures--Dilantin, Lamictal, Phenobarbital, and Tegrital. See First Amended Complaint ¶¶ 11, 13, and 16. Kemp alleges that, on March 29 and April 1, 2002, Neil Hayase,[3] a nurse at the Halawa Correctional Facility, "failed to reorder medication" for him, causing Kemp to suffer seizures. Complaint ¶¶ 5, 14, 16. Kemp alleges that this conduct "constitutes willful neglect and wanton disregard" for his physical condition, and that Hayase was

---

[2]The First Amended Complaint incorrectly alleges that Buan's last name is "Ho." See Motion (Jan. 30, 2006) at 1.

[3]The First Amended Complaint incorrectly spells Hayase's first name "Neal." See Motion (Jan. 30, 2006) at 1.

4

deliberately indifferent to his medical condition and subjected him to more seizures. Id. ¶¶ 25, 27. At the hearing, however, Kemp clarified that he is not claiming that Hayase's failure to reorder the medication was intentional conduct.

Kemp also alleges that Scott Kowaleski,[4] an adult corrections officer at the Halawa Correctional Facility, attempted to help Kemp while he was having a seizure on March 29, 2002. See First Amended Complaint ¶¶ 7, 15. Kemp alleges that Kowaleski "allowed other inmates to assist and[,] in the process[,] a hairbrush was stuck in plaintiff's mouth[,] resulting in the loss of all of his teeth." Id. ¶ 15. Kemp says that this conduct "constitutes willful neglect and wanton disregard" for his physical condition, and that Kowaleski was deliberately indifferent to his medical condition. Id. ¶¶ 25, 27. At the hearing, Kemp clarified that he is not claiming that Kowaleski intentionally caused Kemp harm, but instead, noted that Kowaleski was acting as a "good Samaritan" who did not know what he was doing.

IV.   ANALYSIS.

In Count I of the First Amended Complaint, Kemp alleges cruel and unusual punishment in violation of 42 U.S.C. § 1983. Section 1983 provides:

---

[4] The First Amended Complaint incorrectly spells Kowaleski's last name "Kowoleski." See Motion (Jan. 30, 2006) at 1.

>Every person who, under color of any statute,
>ordinance, regulation, custom, or usage, of
>any State or Territory or the District of
>Columbia, subjects, or causes to be
>subjected, any citizen of the United States
>or other person within the jurisdiction
>thereof to the deprivation of any rights,
>privileges, or immunities secured by the
>Constitution and laws, shall be liable to the
>party injured in an action at law, suit in
>equity, or other proper proceeding for
>redress . . . .

"The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). The Ninth Circuit has stated that the "unnecessary and wanton infliction of pain upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment." Toguchi v. Chung, 391 F.3d 1051, 1056 (9th Cir. 2004). To state a violation of the Eighth Amendment's cruel and unusual punishment prohibition, however, prison officials must be deliberately indifferent to the "serious" medical needs of prisoners.[5] Lopez, 203 F.3d at 1131; Estelle v. Gamble, 429 U.S. 97, 105 (1976) ("deliberate indifference to serious medical

---

[5] The Ninth Circuit has provided examples of "serious" medical needs, characterizing them as "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F.3d at 1131 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).

needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." (internal citation and quotation omitted)).  In other words, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle, 429 U.S. at 105; see also Lopez, 203 F.3d at 1131 ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." (internal quotation omitted)).  This rule applies to "physical, dental, and mental health."  Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  When the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner additionally must show that the delay led to further injury.  McGuckin, 974 F.2d at 1060.

To establish an Eighth Amendment violation, a prisoner "must satisfy both the objective and subjective components of a two-part test."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted); see also Toguchi, 391 F.3d at 1057. First, the prisoner must demonstrate that the prison official deprived him of the "minimal civilized measure of life's necessities."  Hallett, 296 F.3d at 744 (citation omitted). Second, the prisoner must demonstrate that the prison official "acted with deliberate indifference in doing so."  Id. (citation and internal quotation marks omitted).

A prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). "This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 839). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin, 974 F.2d at 1059. Similarly, an accident or an inadvertent failure to provide medical care is insufficient to state a cause of action under § 1983 for a violation of the Eighth Amendment. Id. at 1060.

Defendants Hayase, Kowaleski, and Buan move for judgment on the pleadings on Kemp's § 1983 claim, arguing that

they are qualifiedly immune from it.[6]  <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), sets forth a two-pronged inquiry for determining whether qualified immunity applies.  First, taken in the light most favorable to Kemp, the facts alleged must show that the defendant's conduct violated a constitutional right.  <u>See</u> <u>id.</u> at 201.  "If no constitutional right would have been violated were the allegations established," the inquiry ends.  <u>Id.</u>  If there appears to have been a constitutional violation, however, the second step is to determine whether the right in question was "clearly established . . . in light of the specific context of the case, not as a broad general proposition."  <u>Id.</u>; <u>Walker v. Gomez</u>, 370 F.3d 969, 974 (9th Cir. 2004).

　　　　Buan, Hayase, and Kowaleski argue that the allegations in the First Amended Complaint fail to satisfy the first prong of <u>Saucier</u>.  Kemp admitted at the hearing that the allegations in the First Amended Complaint are insufficient to satisfy the first prong of <u>Saucier</u>.  Because those allegations fail to demonstrate that those Defendants committed a constitutional violation, Buan,

---

[6]In his opposition to the motion, Kemp clarified that all named Defendants are being sued only in their individual capacities.  <u>See</u> Opposition (Feb. 16, 2006) at 2 n.1 ("Reference to 'official' capacity is hereby deleted with respect to all named defendants, including Dr. Sisar Paderes.").  Kemp also clarified that he is not seeking punitive damages from Hayase, Kowaleski, or Buan.  <u>Id.</u> at 2.  At the hearing, Kemp indicated that he had not served a copy of the First Amended Complaint on Melvin Moissa.

Hayase, and Kowaleski have qualified immunity from Kemp's § 1983 claim.

      A.    Buan Has Qualified Immunity.

Kemp alleges that, during a seizure he suffered on August 26, 2002, Nurse Buan "caused serious physical injury to plaintiff's left knee when . . . she fell backwards on his left leg and foot." Complaint ¶¶ 5, 17. Kemp admitted at the hearing that he is not contending that Buan intentionally fell on his leg and that, instead, Buan's conduct was accidental. Such accidental conduct is not deliberate indifference and is insufficient to establish a constitutional violation. See McGuckin, 974 F.2d at 1060. Buan therefore has qualified immunity from Kemp's § 1983 claim.

      B.    Hayase Has Qualified Immunity.

Kemp alleges that, on March 29 and April 1, 2002, Nurse Hayase "failed to reorder medication" for him, causing him to suffer seizures. Complaint ¶¶ 5, 14, 16. Although Kemp alleges that this conduct "constitutes willful neglect and wanton disregard" for his physical condition, see id. ¶ 25, at the hearing, Kemp clarified that he is not claiming that Hayase acted intentionally. As a result, he does not properly allege deliberate indifference sufficient to establish a constitutional violation. See McGuckin, 974 F.2d at 1059-60. Hayase therefore has qualified immunity from Kemp's § 1983 claim.

C.  Kowaleski Has Qualified Immunity.

Kemp alleges that Kowaleski, an adult corrections officer, attempted to help him while he was having a seizure on March 29, 2002.  See First Amended Complaint ¶¶ 7, 15.  Kemp alleges that Kowaleski "allowed other inmates to assist and[,] in the process[,] a hairbrush was stuck in plaintiff's mouth[,] resulting in the loss of all of his teeth."  Id. ¶ 15.  Although Kemp alleges that this conduct "constitutes willful neglect and wanton disregard" for his physical condition, see id. ¶ 25, Kemp clarified at the hearing that he is not claiming that Kowaleski acted intentionally.  Instead, Kemp said that Kowaleski was a "good Samaritan" who did not know better.  In short, Kemp admits that he does not properly allege deliberate indifference sufficient to establish a constitutional violation.  See McGuckin, 974 F.2d at 1059-60.  Kowaleski therefore has qualified immunity from Kemp's § 1983 claim.

V.  CONCLUSION.

The court grants judgment on the pleadings in favor of Buan, Hayase, and Kowaleski.  Because Moissa has not been served with the First Amended Complaint, all of the parties agree that

the only claims remaining for adjudication are against Dr. Sisar Paderas.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, March 6, 2006.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Kemp v. Paderas, Civil No. 03-00419 SOM-KSC; ORDER GRANTING RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS